Middleton, J.
As appears from the foregoing statement of facts both lower courts agreed upon the im *391 portant fact that Butler’s use of. the Weaver Motor Company automobile was such as to create coverage of Butler by the Buckeye policy. The lower courts also agreed on the legal construction of the two policies, to wit, that the coverage of the Buckeye policy was primary and that of the Aetna policy was secondary. With that construction of the policies this court agrees.
The sole question before this court is whether Aetna in making the settlement and paying the money to Gibbs, under the undisputed circumstances of this case, was a mere volunteer without right of recovery from Buckeye.
We do not agree with the conclusion of the Court of Appeals in that regard.
When Butler was sued by Gibbs he had the right to look to both Aetna and Buckeye or to either of them for protection. If Buckeye disclaimed coverage, as it did, and refused to take necessary steps to protect him, he could, and in effect did, demand full protection from Aetna. The Aetna policy provided that it “shall be excess insurance over any other valid and collectible insurance available to the insured. ’ ’ So long as Buckeye disclaimed coverage and refused to participate in any way in negotiating settlement or defending the action, there was no admitted or established “other valid and collectible” insurance. Aetna was, therefore, forced to defend and pay any resulting judgment — or settle. Under its contract of insurance with Butler, Aetna could not abandon him merely because Buckeye chose to deny coverage and gamble on future exoneration. Buckeye was put on notice immediately after the accident by letter written June 5, 1944. The action against Butler was instituted July 20, 1945, and on July 24, 1945, a copy of that petition was sent to Buckeye. By letter dated October 1, 1945, Buckeye again disclaimed coverage of Butler and declined to *392 defend the action. On January 28, 1946, Buckeye was notified by letter that Aetna, after extensive investigation, was satisfied that the action brought against Butler should be settled for $2,500, that Aetna expected to make such settlement within five days, and that Buckeye should proceed to take any steps which it might deem necessary. Buckeye chose to do nothing.
Buckeye could not escape ultimate liability merely by denying coverage and refusing to defend the action. It cannot be immunized from payment by its own breach of contract. See Klaustermeyer v. Cleveland Trust Co., Assignee, 89 Ohio St., 142, 105 N. E., 278.
An action had been instituted against the insured. Aetna took all reasonable measures to preserve any rights which it might have, through subrogation or otherwise, to compel Buckeye to discharge its obligation as primary insurer. The amount paid in settlement is stipulated as reasonable.
It is well settled that one secondarily liable, who is forced to pay because of the refusal, or failure after demand, of the one primarily liable to discharge the obligation, has the right of indemnity from the one primarily liable. Globe Indemnity Co. v. Schmitt, 142 Ohio St., 595, 53 N. E. (2d), 790; Maryland Casualty Co. v. Frederick Co., 142 Ohio St., 605, 53 N. E. (2d), 795; Losito v. Kruse, Jr., 136 Ohio St., 183, 24 N. E. (2d), 705,126 A. L. R., 1194; Herron v. City of Youngstown, 136 Ohio St., 190, 24 N. E. (2d), 708.
Aetna had an interest to protect and a legal obligation to pay. In effecting settlement and making payment under such circumstances Aetna was not a volunteer.
In 50 American Jurisprudence, 698, Section 22, it is said:
“Generally speaking, the party making payment is a volunteer if, in so doing, he has no right or interest *393 of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation. * * *
“Where the person paying the debt has an interest to protect, he is not a stranger.”
Likewise, the right of one paying through compulsion to be subrogated is recognized in 60 Corpus Juris, 716, Section 27, where it is stated:
“Subrogation goes on the theory that the one invoking it has rightfully discharged the debt. It always requires something more than the mere payment of a debt in order to entitle the person paying the same to be substituted in the place of the original creditor. A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation, the payment in Ms case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect.”
It is now determined that Butler was covered by the Buckeye policy and that Buckeye was obligated to defend Butler and pay any judgment rendered against him, within the limits of its policy, or effect settlement. Those rights of Butler against Buckeye passed to Aetna under the subrogation clause in Aetna’s policy.
Therefore, applying the principles of equity and natural justice, Aetna has the equitable right to recover from Buckeye and it also has the right to recover by way of subrogation under the policy.
The instant case is distinguishable on the facts from *394 Farm Bureau Mutual Automobile Ins. Co. v. Buckeye Union Casualty Co., supra. In that case the policies of both companies contained “other insurance” clauses which provided for prorating the claims. Both insurance companies admitted their coverage and the liability of their insured for some amount of damages on the claim asserted. No action was instituted against the insured. One company made full settlement without being forced to do so by court action. The case did not involve primary and secondary liability. Subrogation was not involved. Under those circumstances, the court held that there was no legal liability requiring the settling company to make the payment and consequently that it was a volunteer. The decision in that case is not disturbed. It is not applicable to the facts of the instant case.
For the reasons hereinabove stated, we conclude that Aetna, as the secondary insurer which was forced to make settlement and pay to protect itself, is entitled to recover from Buckeye which was the primary insurer.
The judgment of the Court of Appeals is reversed and final judgment is rendered for Aetna.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Matthias and Hart, JJ., concur.
Taft, J., not participating.